IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 5, 2019

**KEVIN FENNELL v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 12-01164        John Wheeler Campbell, Judge**

_____

**No. W2018-00852-CCA-R3-PC**

_____

The Petitioner, Kevin Fennell, appeals from the denial of post-conviction relief, alleging that his guilty pleas are constitutionally infirm due to trial counsel's failure to inform him that his sentence was required to be served in the Tennessee Department of Correction. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

Jason M. Matthews, Memphis, Tennessee, for the Petitioner, Kevin Fennell.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Pursuant to a plea agreement, the Petitioner entered guilty pleas to two counts of aggravated robbery, see Tenn. Code Ann. § 39-13-402, for which he received an effective sentence of eight years. At the August 9, 2013 guilty plea hearing, the Petitioner stipulated to the following facts presented by the State before entering his Alford plea:

> In Case 12-00164, [the Petitioner] is entering a plea in Count One to aggravated robbery, a B Felony. The sentence recommendation is eight years and that is at eighty-five percent per the statute. I believe there's a Count Two of that indictment for aggravated assault. The state's going to nol pross.

And then Indictment 12-01166, he is pleading guilty as charged to aggravated robbery, eight-year sentence recommendation. Again, that's Range One but must be served at eighty-five percent per the statute.

And the facts of these matters occurred I believe . . . on or around . . . October the 8th a Mr. Biazan (Phonetic) was working at a BP Station . . . when . . . two men entered the store and they presented a handgun to Mr. Biazan and ultimately took about $1400 cash from the register.

A video was made of the incident but there were no suspects until this gentlem[a]n, [the Petitioner], was generated as a person of interest. He was put in a photographic line-up and was publicly identified in that robbery as being one of the persons who committed it.

And similarly a few days later on October . . . the 11th, here in Shelby County he entered the Mapco Store . . . with a second male black. They spoke to the employees of the store briefly and ultimately jumped the counter, pointed a gun at the employees, demanded the money, threatened to kill the employees and ultimately took I think about $85 and a laptop computer from the Mapco at that location.

Ultimately [the Petitioner] was identified by I believe two of the three witnesses or maybe all three from a photo-lineup as being the person who assisted in that robbery and he's the one that took the laptop from the . . . store.

During the plea colloquy, the Petitioner unequivocally stated that he wanted to plead guilty and that he understood the agreed-upon sentence to be eight years. The Petitioner acknowledged that he was waiving his constitutional rights by pleading guilty and that he was entering his pleas freely, voluntarily, and knowingly. Asked whether he was "promised . . . anything else to get [him] to plead guilty[,]" the Petitioner responded, "No promises, no threats, no anything." In addition, the Petitioner stated that he was "highly" satisfied with trial counsel's representation, that he had discussed his case with trial counsel for "nine months now[,]" that he did not feel coerced or threatened to plead guilty, and that he did not have any questions for the court. The trial court accepted the Petitioner's guilty pleas and sentenced him pursuant to the negotiated plea agreement.

On July 28, 2014, the Petitioner filed a pro se petition for post-conviction relief which was amended on October 10, 2014, June 12, 2015, and December 13, 2016. The post-conviction hearings occurred on May 1, 2017 and April 6, 2018.

**Post-Conviction Hearing.** At the May 1, 2017 hearing, trial counsel testified that she was appointed to the Petitioner's case, "received lots of discovery" from prior trial counsel, and reviewed "tons of information" from the investigator. Asked whether she was prepared for trial, she said she met with the Petitioner "very often," reviewed discovery, prepared cross-examinations for each witness, and worked closely with the investigator. She confirmed that she filed a motion to continue trial when, just days before trial, she was presented with video surveillance evidence from the State. Although she felt she was prepared for trial, she "thought it was prudent to ask for additional time." She watched and discussed the video surveillance evidence with the Petitioner, and discussed the State's evidence, witness statements, "the investigator[']s impressions of the witnesses[,]" and the Petitioner's likelihood of conviction. When the Petitioner had questions regarding trial counsel's experience, trial counsel asked another attorney, second counsel, to speak with the Petitioner and provide his opinion regarding the evidence against the Petitioner. Trial counsel explained that she had previously tried cases with second counsel and that the Petitioner knew second counsel. Trial counsel said second counsel "gave [the Petitioner] honest, candid answers to what the likelihood of success at trial would be for him based on the evidence." The Petitioner ultimately decided to plead guilty because "he didn't like the chances he had at trial."

Trial counsel testified that the Petitioner also underwent a mental evaluation, which revealed that "he was competent to stand trial and aid in his defense." Trial counsel said there were no "favorable witnesses" for the Petitioner, that the State had video surveillance of the Petitioner "wearing the actual outfit that he was arrested in[,]" and that his co-defendant had already pled guilty and implicated the Petitioner. She characterized the co-defendant's statements against the Petitioner as "pretty condemning." She said the Petitioner was "unwilling to testify" and that their main defense was to "poke holes in the witness[es]' recollections, their ability to testify with personal knowledge and certainty on the things that they perceived." She said the Petitioner asserted an alibi "[t]hat he didn't do it" but explained that "there was no one to corroborate it." She tried to contact the State's witnesses but "[a]ll of those witnesses were unwilling to talk to the Defense. They were very adamant that they were not going to be helpful to the Defense's position in this case."

Trial counsel confirmed that she did not pressure, threaten, or make promises to the Petitioner in order for him to plead guilty. She advised the Petitioner of his constitutional rights and the waiver of such by pleading guilty, and said the Petitioner "was clear that he understood his rights." She discussed with him the possible defenses at trial, the minimum and maximum sentences he was facing, and the consequences of pleading guilty. Regarding the Petitioner's Petition for Waiver of Trial by Jury and Request for Acceptance of a Guilty Plea, the following exchange occurred:

Q:      . . . [D]o you see on there the section for the location where sentence is to be served?

A:      Yes.

Q:      Okay.  What does it say under location?

A:      The preprinted notation is for S.C.C.C.[1] and that's marked out and it's changed [to] TDOC.[2]

Q:      Okay.  Did you make that correction?

A:      I'm not sure.  I can't really tell based on that because it's possible that I made it.

Q:      But you initially filled out the form; right?

A:      Yes.

Q:      So you would [have] definitely [] been the one that wrote S.C.C.C. in there; right?  Or typed it in the computer; right?

A:      Yes.

Q:      Okay.  Now -- but it was corrected by someone's hand after you printed it; right?

A:       Yes.

Q:      Okay.  Can you say for certain that that was you that corrected that form?

A:      I can't say for certain because it's not initialed but . . .

Q:      Do you know if that had been changed when the [Petitioner] signed this form?

A:      Can I say for certain, no.

---

[1] "S.C.C.C." refers to the Shelby County Corrections Center ("SCCC").

[2] "TDOC" refers to the Tennessee Department of Correction ("TDOC").

Q:      Okay.  So there's a correction on this petition that may have occurred after the defendant signed it; right?

A:      Possibly.

Q:      Possibly.  And it has to do with what location he's going to serve this charge; right?

A:      Yes.

Q:      Okay.  Have you been to the Tennessee Department of Correction Prison?

THE COURT:      Well, let me just cut this off if you would.  He can't get an eight year sentence at the department -- at the Shelby County Correctional Center.  So either the clerk or somebody put the correct location because the Penal Farm, the Correctional Center only has a contract for six years or less.  If it's over six years, it has to go to the Department of Correction.

. . . .

But, you know, so whoever corrected it was because it had to be corrected for the right institution.

Trial counsel could not say for sure whether the Petitioner signed the plea agreement before or after the location was amended, but she agreed that it was important for the Petitioner to know where he would serve his sentence.  Asked whether someone could intelligently and voluntarily sign the plea agreement without knowing where they were going to serve their sentence, trial counsel said, "Yes.  Because I think the substance of a guilty plea is to plead guilty and forego a trial.  Not solely based on where one is going to serve the sentence."

On cross-examination, trial counsel explained the State's video surveillance evidence:

The video showed two men robbing the service station.  It showed a young man matching [the Petitioner]'s physical appearance, dreadlocks, build, complexion, wearing a green, lime green outfit, plaid shorts and shirt and jumping over the counter with the gun pointing it to the clerk and taking money from the register.  And that became increasingly problematic because [the Petitioner] was arrested wearing the outfit that was shown in

- 5 -

the video. And that physical outfit was brought to court as evidence for use in the trial.

She confirmed that she reviewed the video surveillance evidence by herself, with the Petitioner, and again with the Petitioner and second counsel. Trial counsel said, "[second counsel] was just there to give his honest expert opinion on how he believed the jury would perceive this evidence." Trial counsel confirmed that no one coerced or yelled at the Petitioner to influence his decision to plead guilty.

At the April 6, 2018 hearing, second counsel testified that trial counsel asked him to speak with the Petitioner regarding his plea offer and "to give him [] a second opinion as an older lawyer." He explained criminal responsibility to the Petitioner, the fact that he could be held responsible for the actions of his co-defendant, the Petitioner's chances of success at trial, and the sentence he was facing at trial versus through a plea agreement. He confirmed that trial counsel was present at all times while he spoke with the Petitioner and that he and trial counsel previously had tried cases together. He did not recall making a specific recommendation to the Petitioner and only recalled explaining his chances at trial. He testified that he did not pressure the Petitioner into pleading guilty and explained, "I wouldn't have any reason to pressure [the Petitioner]. I didn't know him. I was really trying to be helpful if anything." He did not recall whether he was present when the Petitioner signed the plea agreement.

The Petitioner testified that trial counsel had "been telling [him] to plead guilty for a long time" but he did not want to because "[he] felt like [he] was innocent." He testified that he did not previously know second counsel and said second counsel "told me if I go ahead and sign . . . I'll do two more years at the penal farm and I'll go home[.]" The Petitioner explained second counsel's influence on his decision:

> That was the main thing that influenced my decision by threatening me[,] that my time was going to be enhanced by me splitting the trials up, that's what I'm saying. And [trial counsel] told me she bringing this dude in here and he fixing to be her elbow counsel, co-counsel, whatever term she used, and now you just listen to what he say because she felt like I'm going to lose trial too because she ain't ready to go to trial.

The Petitioner testified that trial counsel and second counsel were both present when he signed the plea agreement. He said second counsel told him, and trial counsel agreed, that he would serve his time at the penal farm at SCCC in Memphis and that, "with all the good time and the two for one, I'm only going to do two years and I'll be back out." The Petitioner testified that he believed he would serve his sentence at SCCC and receive a "maximum two years" there based on how sentencing credits were calculated.

- 6 -

Regarding trial counsel's trial preparation, the Petitioner said she "postponed" discussing trial strategy due to a death in the family, that "she never tried a case on aggravated robbery," and that "she didn't know how the outcome was going to be because she didn't have any experience with it." He said he and trial counsel discussed "pretrial motions and things of that nature" but did not discuss his defense or trial strategy. He confirmed being questioned by the trial court during the plea colloquy but could not remember the questions he was asked. He said, "[trial counsel] told me just go in there and agree with everything anyway, so I just agreed because I didn't know the law." He could not recall whether the trial court told him his sentence would be served in TDOC and said he "didn't even know [what TDOC] was." He said he did not feel free to change his mind before entering his plea and that he felt pressured to plead guilty.

On cross-examination, the Petitioner conceded that he had been previously charged with and pled guilty to multiple misdemeanors for driving while his license was revoked. He denied reviewing discovery with trial counsel and stated that he only watched "some" of the video surveillance evidence with trial and second counsel. He testified that trial and second counsel explained to him that he was facing eight to twelve years for his first aggravated robbery case and that he could receive a higher sentence for his second aggravated robbery case. The Petitioner testified that he wanted to discuss the plea offer with his mom but said trial counsel "told me my mom said go ahead and sign it. My mom didn't say that[.]" Regarding being questioned by the court, the Petitioner did not recall saying that he understood the length or location of his sentence, that no one had promised or threatened him, or that he was satisfied with trial counsel. Asked whether the court advised him that his sentence would be "eight years on each [count] at eighty-five percent at the Department of Correction and they'll be served concurrently" and the Petitioner responded, "I understand everything you say[,]" the Petitioner said trial counsel "told [him] to agree with everything [the court] said." On redirect, the Petitioner testified that his guilty plea was not entered freely and voluntarily.

After the hearings, the post-conviction court took the matter under advisement and entered a written order denying post-conviction relief on May 4, 2018. In its order, the court made the following conclusions:

> An examination of the guilty plea transcript shows that the Court adhered to the requirements of the law and the rule in explaining to the petitioner his guilty plea. To each question asked by the Court the petitioner answered, unequivocally, that he understood what the Court was saying. The transcript reveals no ambiguity on the part of the petitioner about his understanding of his rights or the terms of the guilty plea. Furthermore, the record shows no evidence that the petitioner was coerced in any way to enter his guilty plea.

The court ultimately concluded that the Petitioner failed to carry his burden of proving by clear and convincing evidence that his guilty plea was not entered knowingly and voluntarily. It is from this order that the Petitioner now appeals.

## ANALYSIS

The Petitioner argues that his guilty pleas were not knowingly and voluntarily entered because trial counsel failed to advise him that his sentence was required to be served in the Tennessee Department of Correction. The State contends, and we agree, that the post-conviction court properly denied relief.

In reaching our conclusion, we apply the following well-established framework of law pertaining to post-conviction relief. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to

- 8 -

deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). When ineffective assistance of counsel is alleged in the context of a guilty plea, the prejudice analysis

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Grindstaff, 297 S.W.3d at 216-17.

The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane, 316 S.W.3d at 562. To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; see Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff, 297 S.W.3d at 218). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted).

Moreover, a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

Here, the Petitioner specifically argues that his guilty pleas were not knowing and voluntary because he felt forced and coerced to plead guilty by trial counsel. He asserts that trial counsel failed to explain that he would be required to serve his sentence in TDOC instead of SCCC and that he would not have pled guilty had he known this. In response, the State contends that the Petitioner understood his sentence and the consequences of such and that he pled guilty in order to avoid a longer sentence at trial. The State notes that the Petitioner never indicated any concern to the trial court regarding the location of his incarceration and that it was not mentioned in his petition for post-conviction until the fourth iteration was filed nearly three years after he pled guilty.

In denying post-conviction relief, the post-conviction court found that the Petitioner failed to prove by clear and convincing evidence that his guilty plea was not knowingly and voluntarily entered. The guilty plea colloquy shows that the Petitioner understood his guilty plea, that he entered it knowingly and voluntarily, that there was no evidence of force or coercion, and that trial counsel provided adequate representation to ensure the Petitioner was aware of the consequences of pleading guilty. The Petitioner had the opportunity to ask questions throughout the colloquy but unequivocally stated that he understood the ramifications of his plea and the questions from the court. Moreover, he never questioned or expressed concern over the location of his sentence during his guilty plea and stated that he understood he was pleading to an agreed upon sentence of "eight years on each [count] at eighty-five percent at the department of corrections and they'll be served concurrently[.]" Accordingly, we agree with the post-conviction court and conclude that the Petitioner has failed to establish that his guilty pleas were involuntarily and unknowingly entered. The Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing reasoning and analysis, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE